IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TELECOM ASSET MANAGEMENT, LLC,

    Plaintiff,

v.

FIBERLIGHT, LLC; and DOES 1 through X,

    Defendants.

No. C 14-00728 SI

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

A motion by defendant FiberLight, LLC ("FiberLight") to dismiss the complaint of plaintiff Telecom Asset Management, LLC ("TAM") for lack of personal jurisdiction over FiberLight is scheduled for a hearing on June 13, 2014. Docket No. 11. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court DENIES FiberLight's motion to dismiss.

**BACKGROUND**

TAM is a California limited liability company with its principal place of business in San Francisco that, among other things, uses its expertise in the telecommunications industry to act as an independent sales agent assisting telecommunications companies buy and/or sell wholesale assets and services. Docket No. 1, Compl. ¶¶ 1, 8-9. TAM has extensive knowledge, experience and high-level relationships in the telecommunication industry, which has independent economic value. *Id.* ¶ 9. As

compensation for its services, TAM receives fees and/or commissions from one of the parties to the transaction, usually the seller/provider.[1] *Id.* ¶ 8.

FiberLight is a Delaware limited liability company with its principal place of business in Alpharetta, Georgia. Compl. ¶¶ 2, 10; Docket No. 11-1, Coyne Decl. ¶ 3.[2] FiberLight is in the business of building fiber-optic network infrastructure and selling and/or leasing telecommunications assets, products and services to wholesale and enterprise customers. *Id.* ¶ 10.

In or about 2011, TAM and FiberLight began discussing a business relationship whereby FiberLight would pay commissions to TAM in exchange for TAM bringing FiberLight customers and business opportunities and selling FiberLight's assets, products, and services throughout the United States as a master agent for FiberLight. Compl. ¶ 15. In October 2011, Mike Miller, FiberLight's chief executive officer at the time, and Ben Edmond, FiberLight's president of sales at the time, met with Steve Strong, TAM's president, and Timothy Burks, TAM's chief operating officer, at a national trade convention in Las Vegas. *Id.* ¶ 18; Docket No. 11-1, Coyne Decl. ¶ 28.[3] At this meeting, TAM advised FiberLight that it was aware of business opportunities in Texas with one of TAM's clients, Carrier,[4] and asked FiberLight if it was interested in working together—with TAM acting as FiberLight's sales agent—to pursue the business opportunities with Carrier. Compl. ¶ 19. FiberLight's Mr. Miller stated that he would love to work with TAM to attempt to win Carrier's business, and that FiberLight had in past unsuccessfully tried to win business with Carrier. *Id.* The meeting ended with FiberLight asking

---

[1] It is established practice in the telecommunications industry for sellers/providers to use independent sales agents and pay them residual commissions for relationships and business opportunities they originate that result in revenue to the sellers/providers. Compl. ¶ 14.

[2] In its opposition, TAM objects to several statements made in the Coyne declaration. Docket No. 23, Pl.'s Opp'n at 20-22. To the extent the Court's analysis relies on the objectionable statements, the Court will address TAM's objections below. Otherwise, TAM's remaining objections are OVERRULED as moot.

[3] TAM objects to this paragraph in Mr. Coyne's declaration on the grounds that it lacks foundation and constitutes hearsay. Pl.'s Opp'n at 5. Mr. Coyne has provided proper foundation for his statements because he states that he was personally told this by Mr. Schmitt. Further, "hearsay may be considered at the 12(b)(2) stage if it bears 'circumstantial indicia of reliability.'" *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1117 n.3 (C.D. Cal. 2007) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562 (Fed. Cir. 1994)). Accordingly, the Court OVERRULES TAM's objections.

[4] TAM explains that due to confidentiality and non-disclosure obligations, the parties cannot reveal the identity of Carrier or the specifics of the Texas opportunities absent a protective order. Compl. ¶ 13.

TAM to follow up on the opportunities with Carrier on FiberLight's behalf, and Mr. Miller assigned Mr. Edmond the duty of getting an agent agreement completed with TAM. *Id.* ¶¶ 19-20. TAM explains that due to the short time frame for some of the opportunities, TAM and FiberLight agreed to work on the agent agreement at the same time as the parties were attempting to win Carrier's business. *Id.* ¶ 19.

TAM then began negotiations on the agent agreement with Mr. Edmond. Compl. ¶ 21-22. In or about November or December 2011, Mr. Strong and Mr. Burks had a telephone call with Mr. Edmond. *Id.* ¶ 23. During the call, Mr. Edmond offered to TAM that TAM would be paid in accordance with FiberLight's standard commission percentages, that it could sell any/all assets, products, and services FiberLight offered, and that TAM would earn a commission on all deals that closed. *Id.* TAM alleges that it accepted Mr. Edmond's offer and, thus, entered into a general sales agent agreement with FiberLight whereby TAM would bring business opportunities to FiberLight and FiberLight would pay TAM commissions on any opportunities that closed, including but not limited to the business opportunities in Texas with Carrier. *Id.* ¶¶ 7, 23-25, 61.

TAM alleges that in reasonable reliance on the agreement and FiberLight's representations, TAM brought FiberLight various business opportunities between October 2011 and December 2011, including business opportunities in Texas with Carrier. Compl. ¶ 26. TAM alleges that throughout this period and through various communications, FiberLight repeatedly reaffirmed that TAM was acting as FiberLight's sale agent in connection with Carrier. *Id.* During 2011 and 2012, the parties worked diligently to close the Texas opportunities. *Id.* ¶ 27. Based on TAM's assistance, FiberLight was awarded and closed the Texas deals with Carrier, specifically the "Houston Deal" and the "West Texas Deal." *Id.*

On or about February 2012 and after FiberLight had been award the two Texas deals, FiberLight advised TAM that it did not intend to pay TAM as previously agreed. Compl. ¶ 30. TAM alleges that FiberLight then attempted to change the commission structure of the agreement, lowering the commissions that would be due to TAM. *Id.* ¶ 31. Mr. Miller then told TAM that he did not know that TAM was acting as FiberLight's agent on the Texas opportunities. *Id.* ¶ 32. Between March 2012 and February 2013, FiberLight continued to attempt to unilaterally and retroactively modify the terms of the agreement. *Id.* ¶¶ 38-42. In November 2012, FiberLight was also awarded the "Central Texas Deal."

3

Docket No. 25-4, Schmitt Decl. ¶ 8. TAM alleges that its efforts enabled FiberLight to establish itself as the top contender for the Central Texas Deal and enabled FiberLight to obtain a price increase on the deal. Compl. ¶¶ 28, 33, 35-37, 44. As of the filing of the present action, TAM alleges that it fully performed under the contract, but FiberLight has not paid TAM any commissions for its work, despite FiberLight receiving revenue from the Texas deals. *Id.* ¶¶ 47-50; Docket No. 23-1, Strong Decl. ¶ 18.

On February 14, 2014, TAM filed a complaint against FiberLight in the Northern District of California, alleging causes of action for: (1) breach of contract; (2) breach of implied contract; (3) breach of the covenant of good faith and fair dealing; (4) promissory estoppel; (5) quantum meruit; (6) common count for services rendered; (7) common count for money had and received; (8) restitution/unjust enrichment; (9) fraud—false promise; (10) fraud—intentional misrepresentation; (11) negligent misrepresentation; (12) conversion; (13) constructive trust; (14) violation of the California Independent Wholesale Representatives Contractual Relation Act; (15) violation of the Texas Representatives Act - Texas Bus. & Com. Code Ann. §§ 35.81-35.86; (16) unfair competition; and (17) accounting. Docket No. 1, Compl. By the present motion, FiberLight moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. Docket No. 11, Def.'s Mot.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. "The plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). "Where, as here, a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [plaintiff's] favor." *Id.*; *accord Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state where the court sits. *See Schwarzenegger v. Fred Martin Motor Co.*,

4

374 F.3d 797, 800 (9th Cir. 2004). California's long-arm statute only requires that the exercise of personal jurisdiction comply with federal due process requirements. *Id.* at 800-01 ("Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same.").

For a court to exercise personal jurisdiction over a nonresident defendant, due process requires that the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) ("Applying the 'minimum contacts' analysis, a court may obtain either general or specific jurisdiction over a defendant."). Here, TAM asserts that the Court has personal jurisdiction over FiberLight because FiberLight is subject to specific jurisdiction in California. Docket No. 23, Pl.'s Opp'n at 6-20.

In order for a court to exert specific jurisdiction in accordance with due process, a nonresident defendant must have "'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Int'l Shoe*, 326 U.S. at 315). The Ninth Circuit employs a three-part test to determine whether the defendant has such minimum contacts with a forum state.

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

## DISCUSSION

**I.     Purposeful Availment or Direction**

Under the first prong of the specific jurisdiction test, TAM must establish that FiberLight either purposefully availed itself of the privilege of conducting activities in California or purposefully directed its activities toward California. *See Schwarzenegger*, 374 F.3d at 802; *see also Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (The first prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof."). The Ninth Circuit "often use the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts." *Schwarzenegger*, 374 F.3d at 802 (citations omitted). Purposeful availment analysis is most often used for claims sounding in contract, and purposeful direction is most often used for claims sounding in tort. *Id.* Here, TAM alleges claims against FiberLight sounding in both tort and contract. Therefore, TAM may satisfy the first prong of the specific jurisdiction test by proving either purposeful availment or purposeful direction by FiberLight.[5] *See, e.g.*, *NetApp, Inc. v. Nimble Storage*, No. 5:13-CV-05058-LHK (HRL), 2014 U.S. Dist. LEXIS 65818, at *15-23 (N.D. Cal. May 12, 2014).

A.     Purposeful Availment

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing

---

[5] "Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). However, under the doctrine of pendent personal jurisdiction, "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Id.* Therefore, in a case such as this where all of plaintiff's claims arise out of a common nucleus of operative facts, if personal jurisdiction exists on one claim, the Court may exercise jurisdiction over all the other claims. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012) ("If Washington has jurisdiction over this claim, it may exercise jurisdiction over the remaining claims, which are related."); *NetApp*, 2014 U.S. Dist. LEXIS 65818, at *22-23.

or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. "'Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state.'" *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir. 1990). "A defendant has purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created "continuing obligations" between himself and the residents of the forum.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)). "Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King*, 471 at 476 (emphasis in original).

"[T]he formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (citing *Burger King*, 471 U.S. at 478). But, with respect to interstate contractual obligations, the Supreme Court has "emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473. In determining whether there was a purposeful availment based on a contract, "'[p]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' are the factors to be considered." *Gray & Co.*, 913 F.2d at 760 (quoting *Burger King*, 471 U.S. at 479).

FiberLight argues that there was no purposeful availment because the entire purpose of the agreement was to obtain the deals in Texas with Carrier, and because it did not reach out to California and create ongoing obligations with California residents. Def.'s Mot. at 9-10; Docket No. 25, Def.'s Reply at 3-5. In its briefing, FiberLight attempts to characterize the alleged agreement as a one-shot referral transaction solely related to the business opportunities in Texas with Carrier. However, in the complaint, TAM alleges that the agreement was not limited to the Texas opportunities. Compl. ¶¶ 7, 23, 61. TAM alleges that the agreement was for it to bring business opportunities to FiberLight and for FiberLight to pay TAM commissions on any opportunities that closed, including but not limited to the business opportunities in Texas with Carrier. *Id.* ("Edmond offered and confirmed that TAM . . . could sell any/all assets, products, and services FiberLight offered, and that TAM would earn commissions on everything that Closed . . . ."). Thus, the agreement as alleged was a general sales agent agreement where the parties would have ongoing and continuing obligations to each other with TAM having the

7

1 obligation to seek out business for FiberLight and FiberLight having the obligation to pay commissions
2 to TAM. In deciding FiberLight's motion to dismiss, the Court must accept these allegations as true
3 unless they are controverted by evidence presented by FiberLight. *See Love*, 611 F.3d at 608.

4     The only evidence that FiberLight has presented to the Court in an attempt to contest these
5 allegations is a declaration from FiberLight's current Chief Financial Officer, Kevin Coyne, stating:
6 "[m]y understanding is that, in discussing the terms [of] the potential business relationship, FiberLight
7 never intended to use TAM's services other than for transactions associated with the Carrier located in
8 Texas." Docket No. 11-1, Coyne Decl. ¶ 31. However, the complaint alleges that the negotiations and
9 agreement were made in late 2011 with Mr. Edmond, not Mr. Coyne. Compl. ¶¶ 20-25. In his
10 declaration, Mr. Coyne does not state that he was involved in the negotiations of alleged agreement in
11 late 2011, or that he has spoken to the employees who were involved in the negotiations, such as Mr.
12 Edmond. Therefore, Mr. Coyne's understanding of the contract does not appear to be based on his own
13 personal knowledge and is not relevant to the determination of the parties' intent at the time they
14 allegedly entered into the contract. Moreover, Mr. Coyne's statement is contradicted by evidence
15 attached to his declaration. As exhibit B to his declaration, Mr. Coyne has provided the Court with a
16 redlined version of a proposed sales agent agreement that he states FiberLight sent to TAM.[6] Coyne
17 Decl. ¶ 33, Ex. B. But, the terms of the proposed agreement do not show that the agreement was to be
18 limited to the Texas opportunities. To the contrary, the proposed agreement states under the heading
19 Services:

20     Agent[, TAM,] shall assist in the search, solicitation, and closure of customer agreements for FiberLight products, services, and assets, including but not limited to Fiber, Duct,
21     Construction/Build to Suit ("BOOT"), Colocation, IP, Ethernet and other Lit Services, working with FiberLight's assigned representative ("Services"). FiberLight will allow
22     the Agent to present opportunities that the Agent has, including opportunities with FiberLight's current, pending, or established customers, and pursue those opportunities
23     subject to FiberLight's approval ("Authorized Opportunity"). FiberLight will provide Agent with a written approval or denial within five (5) business days of Agent bringing
24     it a potential opportunity, which may be communicated via email. Fiberlight will make such decisions reasonably and in good faith.

25
26 Docket No. 11-1, Coyne Decl. Ex. B. § 3.1 (underlining and redlined portions removed). The proposed
27 agreement also states that it will have an initial term of one year and shall automatically renew for

28

---

[6] TAM alleges that this redlined version of the proposed agreement reflects the terms of the agreement that was reached by the parties during their earlier discussions. Compl. ¶ 29.

*United States District Court*
*For the Northern District of California*

one-year periods unless and until written notice of non-renewal is provided to either party within 30 days prior to the end of the then current term. *Id.* § 2. In addition, the proposed agreement sets forth the commissions that are payable to TAM under the contract, including commissions for both recurring and non-recurring revenue. *Id.* § 4.1. Thus, the terms of the proposed agreement actually supports TAM's allegations that the alleged agreement was intended to be a general sales agent agreement—not limited to the Texas opportunities with Carrier—with the parties having continuing obligations to each other where TAM had the obligation to seek out business for FiberLight and FiberLight had the obligation to pay commissions to TAM for completed transactions.

In addition, TAM has provided the Court with evidence corroborating its allegations that the agreement was intended to be a general sales agent agreement. Mr. Strong, TAM's president, states that as FiberLight's agent under the agreement, TAM brought to FiberLight business opportunities in Florida, Georgia, and Alabama in addition to the Texas opportunities. Docket No. 23-1, Strong Decl. ¶ 13.

The Court also notes that the alleged agreement was not solely the result of unilateral solicitation by TAM. Mr. Coyne states in his declaration that "FiberLight sought this potential business relationship with TAM based on TAM's unique relationship with Carrier . . . ."[7] Docket No. 11-1, Coyne Decl. ¶ 30. *See Harris Rutsky*, 328 F.3d at 1130-31 (finding important that the defendant "purposefully sought out a business relationship with a California corporation"). In addition, TAM has presented the Court with evidence showing that prior to the negotiations in late 2011, FiberLight knew that TAM was a California company, Docket No. 23-1, Strong Decl. ¶¶ 6-7, meaning that FiberLight knew that it was entering into continuing obligations with a California resident and that portions of the contract would be performed by TAM in California at its principal place of business in San Francisco. *See Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (finding important where the contract was to be performed in the future).

---

[7] TAM objects to this statement in Mr. Coyne's declaration on the grounds that it lacks foundation and constitutes hearsay. Pl.'s Opp'n at 5. Mr. Coyne has provided proper foundation for this statements because he states that he was personally told this by Mr. Schmitt. Further, "hearsay may be considered at the 12(b)(2) stage if it bears 'circumstantial indicia of reliability.'" *Mitan*, 497 F. Supp. 2d at 1117 n.3. Accordingly, the Court OVERRULES TAM's objections.

9

Moreover, if the scope of the agreement was as alleged in the complaint and as reflected in the redlined proposed agreement, then TAM could assist in the search, solicitation, and closure of customer agreements for any FiberLight assets. Compl. ¶ 23; Docket No. 11-1, Coyne Decl. Ex. B. This is important because at the time of the alleged agreement FiberLight owned assets in California, specifically conduit running from San Francisco to San Jose, California. Docket No. 11-1, Coyne Decl. ¶ 14-15; Docket No. 25-4, Schmitt ¶ 3. Therefore, these assets were subject to the agreement, and TAM had the ability to offer them for sale and present FiberLight with business opportunities related to these California assets. Also, because the alleged agreement was not limited to any geographic area, TAM could provide FiberLight with business opportunities located in California. Indeed, such potential business opportunities would not have been purely speculative as FiberLight admits that it listed Los Angeles and San Francisco on certain company communication—including emails, maps, and its website—as places for potential FiberLight growth. Docket No. 25-1, Coyne Decl. ¶ 4; *see also* Docket No. 23-1, Strong Decl. Ex. B; Docket No. 23-7, Carter Decl. Ex. A. Thus, the alleged agreement allowed for the transaction of business within the forum state.[8] *See Gray & Co.*, 913 F.2d at 760. This combined with the fact the alleged agreement created continuing obligations between FiberLight and TAM, a California resident, is sufficient to constitute a purposeful availment. *See id.*; *Burger King*, 471 at 473, 475-76; *Harris Rutsky*, 328 F.3d at 1130-31. Accordingly, the Court concludes that TAM has satisfied the purposeful availment test.

B.  Purposeful Direction

TAM also argues that FiberLight's contacts are sufficient to satisfy the purposeful direction test based on the material misrepresentations that FiberLight's employees allegedly made to TAM. Pl.'s Opp'n at 10-11. Purposeful direction is evaluated "under the three-part 'effects' test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984)." *Schwarzenegger*, 374 F.3d at 803.

---

[8] FiberLight argues that the only transactions completed under the alleged agreement were related to the business opportunities in Texas with Carrier, not any of the other potential transactions identified by TAM. Def.'s Reply at 3. FiberLight further argues, therefore, that these speculative transactions are not part of the specific jurisdiction analysis. *Id.* The Court disagrees. The relevant inquiry is not limited to whether the parties actually conducted business in California under the contract. Rather, the inquiry is simply whether the contract allows for the transaction of business within the forum state. *See Gray & Co.*, 913 F.2d at 760.

10

"Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).

TAM's allegations regarding the alleged misrepresentations that FiberLight's employees made to TAM are likely sufficient to satisfy the purposeful direction test. *See Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977) ("Data Disc states that STA, through its employee Fitzhugh, made material misrepresentations concerning the value of an assigned contract on which Data Disc relied in resuming previously stopped shipments. The inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement."); *see also Bancroft & Masters*, 223 F.3d at 1087-88 (collecting cases and explaining that "'express aiming' encompasses wrongful conduct individually targeting a known forum resident"). However, such a determination is unnecessary because TAM has shown that FiberLight's contacts related to the alleged contract satisfy the purposeful availment test, and TAM's contract and tort claim arise out of a common nucleus of operative facts. Therefore, the Court may and does exercise pendent personal jurisdiction over TAM's non-contract claims. *See Wash. Shoe*, 704 F.3d at 673; *NetApp*, 2014 U.S. Dist. LEXIS 65818, at *22-23. Accordingly, TAM has satisfied the first prong of the specific jurisdiction test.

## II.     Relation Between Claims and Contacts

"The second requirement for specific, personal jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum related activities." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). The Ninth Circuit "has referred to the second prong of the specific jurisdiction test as a 'but for' test." *Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 742 (9th Cir. 2013). "Under the 'but for' test, 'a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action.'" *Id.*; *see also Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) ("Plaintiffs must show that they would not have suffered an injury 'but for' [defendant]'s forum related conduct.").

Here, there is a direct nexus between FiberLight's forum-related activities and TAM's causes of action. FiberLight's allegedly acceptance of and breach of a contract that involved continuing

11

obligations between FiberLight and TAM, a known California resident, is the basis for all of TAM's claims in this action. But for FiberLight's alleged actions related to the contract, TAM's injuries would not have occurred. Accordingly, TAM has satisfied the second prong of the specific jurisdiction test.

### III.    Fair Play and Substantial Justice

Because TAM has satisfied the first two prongs of the specific jurisdiction test, FiberLight now bears the burden of presenting a "compelling case" that the exercise of jurisdiction would be unreasonable. *See Burger King*, 471 U.S. at 476-78; *Schwarzenegger*, 374 F.3d at 802. In determining whether the exercise of jurisdiction would be reasonable, a court should consider the following seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1088 (9th Cir. 2000); *accord Learjet*, 715 F.3d at 745. "No one factor is dispositive; a court must balance all seven." *Panavision*, 141 F.3d at 1323.

As to the first factor, the extent of FiberLight's purposeful interjection into California is enough to satisfy the purposeful availment requirement, as explained above. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114-15 (9th Cir. 2002). Moreover, FiberLight possesses other contacts with California in addition to the contacts related to the plaintiff's claims, such as it registering to do business in California and its pre-contract purchases and sales of assets located in California. Docket No. 11-1, Coyne Decl. ¶¶ 12-15, 18, Ex. A. Therefore, this factor weighs in favor of exercising personal jurisdiction over FiberLight.

As to the second factor, "[a] defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" *Panavision*, 141 F.3d at 1323. FiberLight would be burdened by litigating the case in California because it is a company based in Alpharetta, Georgia, "but the inconvenience is not so great as to deprive [it] of due process." *Id.*; *see also CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)

("[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past."); *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("In this era of fax machines and discount air travel, requiring the partnership to defend itself in California under the circumstances as it alleges them would not be so unreasonable as to violate due process."). Therefore, this factor weighs slightly in favor of FiberLight. *See CE Distrib.*, 380 F.3d at 1112.

As to the third factor, FiberLight does not argue that litigating this matter in California would create a conflict with the sovereignty of the State of Georgia. *See* Def.'s Mot. at 13; Def.'s Reply at 10. Therefore, this factor is neutral.

As to the fourth factor, California has an interest in seeing that its residents are provided an effective means of redress when they are injured by a breach of contract. *See Corporate Inv. Business Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987). In addition, "California has a strong interest in providing a forum for its residents and citizens who are tortiously injured." *Dole*, 303 F.3d at 1115-16; *see also Burger King*, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). Since TAM is a California company and its principal place of business is in California, this factor favors TAM. *See Dole*, 303 F.3d at 1115-16.

As to the fifth factor, "[t]his factor focuses on the location of the evidence and witnesses. It is no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1323 (citation omitted). FiberLight argues that the majority of witnesses in this case are located in Georgia and Texas, and the majority of documents are located in Georgia. Def.'s Mot. at 13. The Court recognizes that based on the allegations in the complaint, this action will likely involve evidence and witnesses located in Georgia and Texas, but it also will likely involve evidence and witnesses located in this forum, California. Therefore, this factor is neutral. *See CE Distrib.*, 380 F.3d at 1112 ("Factor (5) is in equipoise. [Defendant] contends that the majority of the witnesses and evidence relevant to this dispute are outside Arizona. [Plaintiff] counters that a significant portion of the witnesses and documents relevant to [its] claims are located in Arizona.").

As to the sixth factor, California is a more convenient forum for TAM since it is a California limited liability company with its principal office in San Francisco. *See* Compl. ¶ 1. However, "[i]n

13

evaluating the convenience and effectiveness of relief for the plaintiff, [the Ninth Circuit has] given little weight to the plaintiff's inconvenience." *Panavision*, 141 F.3d at 1324. Therefore, this factor weighs slightly in favor of TAM. *See id.*; *see also Harris Rutsky*, 328 F.3d at 1133 ("[W]e have said previously that this factor is not of paramount importance.").

As to the final factor, TAM acknowledges that there are alternative forums for the dispute, such as Texas or Georgia. Therefore, this factor weighs in favor of FiberLight. *See Panavision*, 141 F.3d at 1324; *Harris Rutsky*, 328 F.3d at 1133-34.

After balancing the above factors, the Court concludes that the exercise of personal jurisdiction over FiberLight is reasonable. The problems identified by FiberLight with the present forum "are identical to those that face most parties who defend actions outside their home states—they and their witnesses must travel to distant fora." *Corporate Inv. Business Brokers*, 824 F.2d at 791. This is insufficient to present a compelling case against the exercise of jurisdiction. *See id.* Accordingly, FiberLight has failed to meet its burden of presenting a "compelling case" that the exercise of personal jurisdiction here would be unreasonable.

## CONCLUSION

For the foregoing reasons, the Court concludes that it possess specific, personal jurisdiction over FiberLight, and, therefore, the Court DENIES defendant FiberLight's motion to dismiss the complaint for lack of personal jurisdiction. Docket No. 11.

**IT IS SO ORDERED.**

Dated: June 12, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

14