UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELECOM ASSET MANAGEMENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FIBERLIGHT, LLC,<br><br>Defendant. | Case No. 14-cv-00728-SI<br><br>**ORDER ON PLAINTIFF'S MOTIONS FOR ASSIGNMENT ORDER AND FOR ORDER RESTRAINING JUDGMENT DEBTOR**<br><br>Re: Dkt. Nos. 158, 162 |

Plaintiff Telecom Asset Management, LLC ("TAM") prevailed at trial and, on August 19, 2016, the Court entered judgment in its favor in the amount of $16,964,055.[1] *See* Dkt. Nos. 141-42. On October 25, 2016, the Court denied defendant FiberLight, LLC's ("FiberLight's") motion for a new trial or to alter or amend the judgment. Dkt. No. 160. FiberLight filed a notice of appeal to the Ninth Circuit on November 16, 2016. Dkt. No. 170. FiberLight has not taken steps to satisfy the Court's judgment and the parties have not reached an agreement regarding repayment.

Before the Court are TAM's motions to enforce the judgment through an assignment of rights, Dkt. No. 158, and for an order restraining FiberLight from making distributions to its members until the judgment has been fully satisfied, Dkt. No. 162. FiberLight opposes both motions,[2] but has agreed not to make any member distributions prior to January 6, 2017. Dkt. Nos. 164, 168-69. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is

---

[1] After entry of judgment, the Clerk of the Court taxed costs in the amount of $14,950.15. Dkt. No. 167.

[2] FiberLight objects to certain evidence submitted by TAM and seeks leave to file a Sur-Reply. *See* Dkt. No. 174. FiberLight's objection is SUSTAINED; the Court will not rely on the expert evidence submitted with TAM's Reply in support of its Motion for Assignment Order. FiberLight's request for leave to file a Sur-Reply is DENIED.

appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court will GRANT plaintiff's motions in part.

**LEGAL STANDARD**

**I.   Assignment Order**

The execution of final judgments is governed by Federal Rule of Civil Procedure 69(a)(1). Rule 69 provides that a federal district court must apply the procedures for execution of judgments followed in the state where the court is located, except to the extent a federal statute is applicable. Fed. R. Civ. P. 69(a)(1).

In California, a judgment creditor may obtain an assignment order against a judgment debtor pursuant to Civil Procedure Code section 708.510(a), which provides, in part, "upon application of the judgment creditor . . . the court may order the judgment debtor to assign to the judgment creditor . . . all or part of a right to payment due or to become due, . . . including but not limited to" rents, commissions, and royalties, among others. Cal. Civ. Proc. Code § 708.510(a); *see also id.*, Leg. Comm. Cmts. ("[Section 708.510] also provides an optional procedure for reaching assignable forms of property that are subject to levy, such as accounts receivable, general intangibles, judgments, and instruments."). "A right to payment may be assigned . . . only to the extent necessary to satisfy the money judgment." *Id.* § 708.510(d).

"[T]he court has broad discretion in determining whether to order an assignment." *Greenbaum v. Islamic Republic of Iran*, 782 F. Supp. 2d 893, 895 (C.D. Cal. 2008) (citation omitted). In order to ensure that an assignment is both warranted and permissible under section 708.510(a), courts require that a party seeking an assignment order identify the intended source or sources that are obligated to make payments to the judgment debtor. *See, e.g.*, *UMG Recordings, Inc. v. BMG Music Grp., Inc.*, No. 07-5808, 2009 WL 2213678, at *2-3 (C.D. Cal. July 9, 2009); *Garden City Boxing Club, Inc. v. Briano*, No. No. 06-1270, 2007 WL 4463264, at *1 (E.D. Cal. Dec. 17, 2007). A request "for a general assignment of all possible funds due to Defendant" that does not "identify any specific source of money to be assigned" shall not be granted. *Garden City Boxing Club*, 2007 WL 4463264, at *1.

## II. Restraining Order

California Civil Procedure Code section 708.520 provides, in part, that "[w]hen an application is made pursuant to Section 708.510 or thereafter, the judgment creditor may apply to the court for an order restraining the judgment debtor from assigning or otherwise disposing of the right to payment that is sought to be assigned." *Id.* § 708.520(a). A court may issue a restraining order based on "a showing of need for the order." *Id.* § 708.520(b). "There is little case law as to what constitutes an adequate showing of need . . . . What case law there is, however, indicates that there is a relatively low threshold." *Legal Additions LLC v. Kowalski*, No. 08-2754, 2011 WL 3156724, at *3 (N.D. Cal. July 26, 2011). A court issuing a restraining order may, in its discretion, "require the judgment creditor to provide an undertaking." Cal. Civ. Proc. Code § 708.520(b).

## DISCUSSION

TAM's two motions request an assignment of rights and a restraining order. Because the restraining order would follow only from a valid assignment of rights, *see* Cal. Civ. Proc. Code § 708.520(a), the Court first considers TAM's request for an assignment order.

## I. Assignment Order

As an initial matter, the Court must determine whether TAM has identified proper sources of payment for an assignment of rights. A request must not be too general and should identify specific sources of money to be assigned. *See Garden City Boxing Club*, 2007 WL 4463264, at *1.

TAM requests an assignment of rights over three categories of property: (1) FiberLight's accounts receivable from Verizon Wireless out of the West Texas and Central Texas deals; (2) FiberLight's accounts receivable from Sprint, AT&T, and T-Mobile related to its Texas network; and (3) sale proceeds generated by any future sale of FiberLight to an as yet unknown third party. *See* Mot. for Assignment (Dkt. No. 158) at 4, 7. The Court finds that only TAM's first request is

sufficiently specific.[3]

With these limitations in mind, the Court now turns to California's assignment statute to determine whether TAM's request for an assignment of the Verizon revenues is appropriate. California Civil Procedure Code section 708.510 provides that "court[s] may take into consideration all relevant factors" in determining whether to issue an assignment order. *Id.* § 708.510(c). Subsection (c) lists certain factors courts may find helpful, including "[p]ayments the judgment debtor is required to make or that are deducted in satisfaction of other judgments and wage assignments," "[t]he amount remaining due on the money judgment," and "[t]he amount being or to be received in satisfaction of the right to payment that may be assigned." *Id.* § 708.510(c)(2)-(4).

The Court first examines "[p]ayments the judgment debtor is required to make or that are deducted in satisfaction of other judgments or wage assignments." *Id.* § 708.510(c)(2). TAM argues that it is "unaware of any other payment obligations that FiberLight has . . . ." Mot. for Assignment (Dkt. No. 158) at 5. FiberLight counters that it must make periodic payments to CoBank pursuant to its credit agreement. Opp'n to Assignment (Dkt. No. 168) at 15. According to FiberLight, it owes "quarterly principal payments" in the amount of $512,500, with a final balloon payment of roughly $195,000,000 due in June 2019. FiberLight also estimates that it "will be required to spend another $100 million" to complete the construction required under the West Texas and Central Texas deals. *Id.* FiberLight contends that if the Court assigns FiberLight's right to payment, the company will be unable to meet these, and other, obligations.

---

[3] Based on the trial evidence, the Court is familiar with the Verizon agreements and finds that, in this regard, TAM has adequately identified the sources of payment subject to assignment. TAM's requests for an assignment of receivables from Sprint, AT&T, and T-Mobile on the Texas networks and for a general order assigning proceeds from a FiberLight sale are DENIED. The Court declines TAM's invitation to rely on accounting records from trial that show certain revenue streams on the Texas network from these other carriers. In any event, compared to recurring revenues under the Verizon contracts, these additional amounts are insignificant. Additionally, the Court will not assign proceeds from a sale of FiberLight without a contract, an identified buyer, or a purchase price. TAM's only support that a sale might occur is a dubious internet news article stating that FiberLight was soliciting bidders for a potential auction in August 2016. Although FiberLight's owners may be testing the market for an eventual sale, there is presently no evidence that any such sale is imminent or poses a threat to TAM.

1   *Id.* at 15-16.

2   Second, the Court considers "[t]he amount remaining due on the money judgment." Cal.
3   Civ. Proc. Code § 708.510(c)(3). The full amount of the judgment remains due: $16,964,055, plus
4   costs and post-judgment interest.

5   Third, the Court examines "[t]he amount being or to be received in satisfaction of the right
6   to payment that may be assigned." Cal. Civ. Proc. Code § 708.510(c)(4). The judgment amount,
7   while substantial, seems less so when contrasted with the amounts to be received under the
8   Verizon contracts. FiberLight states that it will receive "$2.2 million per month . . . over the next
9   two years and $450,000 per month for the remaining 15 years" under the West Texas and Central
10  Texas deals. Decl. Coyne (Dkt. No. 168-1) ¶ 14; Opp'n to Assignment (Dkt. No. 168) at 15.
11  FiberLight has already received a substantial amount of money under the Texas deals -- according
12  to TAM, some $180 million. *See* Mot. for Assignment (Dkt. No. 158) at 6.

13  Finally, the Court may assess any other "relevant factors" in determining whether to issue
14  the requested assignment order. FiberLight argues that compelling an assignment of rights in its
15  accounts receivable would violate its security agreement and credit agreement with lender
16  CoBank, triggering an event of default.[4] Opp'n to Assignment (Dkt. No. 168) at 10-12.
17  FiberLight's capital structure, however, cannot serve as a shield against the satisfaction of its other
18  debts. The credit and security agreements necessarily permit FiberLight to make payments and
19  satisfy obligations in the ordinary course of business. Simply because FiberLight has pledged its
20  accounts receivable, among other assets, as security for its indebtedness does not mean that

---

[4] TAM correctly points out that FiberLight is likely already in technical default under its credit agreement. The credit agreement provides that "[a]ny final judgment[] or order[] . . . in excess of $2,000,000 . . . which judgment is not satisfied, discharged, vacated, bonded, or stayed pending appeal within a period of sixty (60) days from the date of entry" constitutes an event of default under the credit agreement. *See* Reply for Assignment (Dkt. No. 172) at 8-9; Decl. Coyne, Ex. 3, Credit Agreement § 9.1(f) (Dkt. No. 168-2) at 205-06. The Court's final judgment, which exceeds $2,000,000, has not been "satisfied, discharged, vacated, bonded, or stayed pending appeal" for more than sixty days since entry. Although FiberLight may technically be in default, commercial realities make it unlikely that CoBank will accelerate the indebtedness under the credit agreement. *See* Credit Agreement § 9.2(a) (making CoBank's acceleration of loans under the agreement upon an event of default optional unless acceleration is specifically requested by certain other lenders). The parties to the credit agreement may instead choose to amend the agreement or waive certain defaults thereunder, a less drastic reaction to a minor technical default. *See id.* § 11.1 (describing modifications, amendments, and waivers under the agreement).

FiberLight can avoid satisfying judgments against it. Any violation of the agreements caused by an assignment of rights is FiberLight's doing. If FiberLight had requested a stay of execution, offered to post a supersedeas bond, or agreed to a practical repayment plan with TAM, TAM would not be seeking an assignment order.

FiberLight argues that the Court cannot assign its rights in the Verizon receivables because such an assignment would not comply with California law. Opp'n to Assignment (Dkt. No. 168) at 10-11. FiberLight claims that because it granted a first priority security interest in its accounts receivable to its lender, CoBank, assigning its rights to payment would give TAM, an unsecured creditor, priority over CoBank in violation of California's Commercial Code. *Id.* FiberLight further states that an assignment of rights would be futile because CoBank would continue to hold a priority interest over FiberLight's receivables. *Id.* An assignment of rights to payments over which CoBank has a first priority security interest may violate FiberLight's credit agreement, but such an assignment does not automatically conflict with California law on creditors' rights. *See Greenbaum*, 782 F. Supp. 2d at 894 ("An assignment order does not preclude later challenges to whether the claims were assignable in the first instance since California Code of Civil Procedure § 708.510 . . . does not make any property assignable that is not already assignable."). FiberLight points to no authority indicating that an assignment order is forbidden under these circumstances.

It is true, as TAM suggests, that FiberLight could avoid an assignment order by posting a supersedeas bond. Absent a stay pending appeal, federal judgments are immediately enforceable. *In re Sui*, No. 16-1053, 2016 WL 4063716, at *3 (B.A.P. 9th Cir. July 26, 2016) (citing *Bennett v. Gemmill* (*In re Combined Metals Reduction Co.*), 557 F.2d 179, 190 (9th Cir.1977)). Rather than ask the Court to stay enforcement, however, FiberLight has chosen simply not to pay the judgment, which FiberLight characterizes as "Disputed" because of its appeal.[5] Under these circumstances, the Court must rule on the request for an assignment order.

The complex nature of an individual company's financing arrangements and budgeting

---

[5] FiberLight argues that posting a bond would paralyze its business, lead to a default under its loan obligations, and result in a fire sale among its creditors. While the Court is not persuaded that posting a bond would irreparably harm FiberLight and push the company into insolvency, the Court will not order FiberLight to post a supersedeas bond where FiberLight prefers not to.

considerations makes it difficult for a court to step in and assign rights to certain cash flows. Based on the record, the Court cannot easily determine whether diverting approximately $17 million in FiberLight's accounts receivable will truly impair the company's ability to manage ongoing operations. The parties to this dispute are best positioned to work out a fair repayment plan that accommodates both companies.

While FiberLight has made no apparent effort to satisfy the judgment in this matter since its entry in August 2016, FiberLight's behavior in this regard is perhaps not as egregious as TAM suggests. After entry of judgment, FiberLight has continued litigating its position through filing a post-trial motion, Dkt. No. 149, and, once the Court denied that motion, by appealing to the Ninth Circuit, Dkt. No. 170. Nevertheless, the Court's judgment is not simply a suggestion. Unless the Court stays execution, the judgment is final and binding against FiberLight.

After balancing relevant statutory and other considerations, the Court GRANTS TAM's motion to compel an assignment of rights in FiberLight's accounts receivable from the West Texas and Central Texas deals. However, the Court's assignment order will become enforceable 60 days from the date of entry, giving the parties time to work out an alternative agreement. The Court urges the parties to settle their differences and agree on a repayment schedule to avoid the potential challenges posed by an assignment of rights. If the parties cannot reach an agreement within 60 days, however, TAM will be assigned FiberLight's rights to payment from Verizon on the West Texas and Central Texas deals until the Court's judgment has been satisfied in full. If the parties cannot agree otherwise, after 60 days FiberLight will have had sufficient time to discuss the impending assignment with its creditors and, if necessary, to obtain a waiver of any default such assignment may cause under its loan agreements. The Court remains hopeful that FiberLight will find a way to settle the judgment swiftly and fairly, without undue disruption of its operations.

## II. Restraining Order

TAM has also filed a motion for a restraining order to prevent all distributions by FiberLight to its members until the Court's judgment has been satisfied. However, California

7

1  Civil Procedure Code section 708.520 facially limits such restraining orders to "the right to
2  payment that is sought to be assigned." *Id.* § 708.520(a). Thus, a restraining order must be
3  limited to preventing assignment or disposal of the West Texas and Central Texas accounts
4  receivable. The Court does not have unlimited authority in this context to restrain FiberLight from
5  distributing all funds to its members, only those funds to which TAM has rights through
6  assignment.

7  Moreover, a restraining order under section 708.520 may only issue upon a "showing of
8  need for the order." *Id.* § 708.520(b). The threshold of need for a restraining order is "relatively
9  low." *Legal Additions*, 2011 WL 3156724, at *3. The Court finds that TAM has demonstrated a
10 need for the order, based largely on FiberLight's unwillingness to pay or post a bond, and
11 GRANTS TAM's motion, in part. Accordingly, FiberLight is hereby restrained from distributing
12 proceeds from the West Texas and Central Texas accounts, or otherwise disposing of its rights to
13 payment thereunder, until the Court's judgment has been paid in full. The Court DENIES
14 FiberLight's request that it order TAM to provide an undertaking.

15 This order can, at any time, be superseded by an agreement between the parties regarding
16 satisfaction of the Court's judgment, or, upon noticed motion, modified based on a "material
17 change in circumstances." *See* Cal. Civ. Proc. Code § 708.560.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS TAM's motions, in part.

With respect to the request for an assignment order, IT IS HEREBY ORDERED as follows:

Payments due, or to become due, from Verizon Wireless to the judgment debtor, FiberLight LLC, under the West Texas and Central Texas projects, are hereby assigned to the judgment creditor, Telecom Asset Management LLC, **effective 60 days from the date hereof**, until such time as the judgment herein is fully satisfied or unless the parties stipulate otherwise.

With respect to the restraining order, IT IS HEREBY ORDERED that FiberLight is immediately restrained from assigning or otherwise disposing of the rights to payment described

8

above, so that the rights to payment may be available for satisfaction of the judgment herein.

This order resolves Dkt. Nos. 158, 162, and 174.

**IT IS SO ORDERED**.

Dated:  December 12, 2016

SUSAN ILLSTON
United States District Judge